## GAMBOA, RODRIGUEZ, RIVERA & CO., Inc., v. IMPERIAL SUGAR CO.

### No. 9995.

Circuit Court of Appeals, Fifth Circuit.
Feb. 25, 1942.

L. S. Julian, of Miami, Fla., and Alfred C. B. McNevin, of New York City, for appellant.

John P. Bullington, of Houston, Tex., and James A. Dixon, of Miami, Fla., for appellee.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

In September, 1938, Imperial Sugar Company, through Lamborn & Company, Inc., as broker, entered into a written contract for the purchase of 10,000 long tons of Philippine centrifugal sugar from Gamboa, Rodriguez, Rivera & Co., Inc. The contract was styled, "Raw Sugar Contract. Philippines—Cost, Insurance and Freight", and provided for shipment of the sugar from the Philippine Islands in equal monthly installments of 1,000 tons each, commencing in January and ending in October, 1939, destination of the shipments to be Galveston, Texas.

In 1939 in accordance with its contract Gamboa shipped to Imperial 1,000 tons of sugar on board the S/S "Havelland" three parcels of 1,000 tons each on board the S/S "Friesland", and 1,000 tons on board the S/S "Wasgenwald". All three ships were owned and operated by the Hamburg-American Line—North German Lloyd. Insurance was procured and invoices were prepared by Gamboa on each of the shipments, and from the invoice price there was deducted the cost of freight which was to be paid by Imperial at destination. Gamboa then drew drafts against Imperial for the shipments, and attached to the drafts the invoices, the on-board bills of lading indorsed in blank, and the insurance policies. The drafts and accompanying papers were in due course presented to Imperial.

The voyages of the three vessels commenced, but with the outbreak of the war between England and Germany the "Havelland" put in at the neutral port of Punta Arenas, Costa Rica, and later proceeded to Manzanillo, Mexico; the "Friesland" proceeded to Paita, Peru, and remained there; and the "Wasgenwald" ended its voyage at Sabang, Sumatra. Hamburg thereupon notified Gamboa and Imperial that the vessels would not complete the agreed voyage and offered to surrender the cargoes upon payment of the full freight to the agreed destination. Prior to receipt of notice of the frustration of the voyages Imperial had accepted the drafts and accompanying papers on the four 1,000 ton lots of sugar on the "Havelland" and "Friesland", and it surrendered the bills of lading and under protest paid the freight on these shipments, amounting to $6,750.00 on the "Havelland" and $20,648.25 on the "Friesland". Imperial refused to accept the draft and papers on the "Wasgenwald" shipment, and they were returned to Gamboa's agent. Gamboa thereupon surrendered the bill of lading to Hamburg and paid the freight amounting to $5,143.50. Imperial thereafter agreed to accept the draft and accompanying documents on the "Wasgenwald" shipment, and it then paid Gamboa in accordance with an amended invoice which included the freight which Gamboa had paid to Hamburg. Imperial then at an expense of more than $65,000.00 made arrangements for and secured transshipment of the five 1,000 ton parcels of sugar which had been stranded in three foreign ports.

Imperial and Gamboa on the 20th and 30th days of December, 1939, respectively, filed libels against Hamburg in the District Court of the United States for the Southern District of Florida, in Admiralty, and by writs of foreign attachment levied upon

Hamburg's S/S "Auraca" which was found within the jurisdiction of the court. The libellants sought to recover, among other things, the freight paid for the agreed voyages which had not been completed. Hamburg filed answers to the libels and in September, 1940, paid different sums to Imperial and Gamboa in settlement of various claims asserted in their respective libels. It further conceded liability for the sum of $32,541.75, the total amount of freight received by it for the voyages which were not completed. Because of conflicting claims of Imperial and Gamboa respecting this sum, Hamburg paid the freight money into the registry of the district court, it "being agreed by separate stipulations in writing entered into by and between Gamboa, Imperial, and Hamburg filed in said District Court, that the respective rights of said Gamboa and Imperial to all or any part of said sum might be litigated and determined or otherwise adjusted as they might agree, as upon a petition for the disposition of remnants and surpluses in the possession of the District Court." Thereafter by agreement of counsel and on approval of the court the libels of Imperial and Gamboa were consolidated and were treated as asserting their respective claims to the sum of $32,541.75 on deposit in the registry of the court. A trial was then had, and the court, after hearing evidence and argument of counsel made findings of fact and conclusions of law and entered judgment awarding the full amount of the freight money to Imperial.

The parties agree that the sugar purchase contract was in substance and effect a "c. i. f. contract", and that the price quoted in the contract included the cost of the sugar, the cost of insurance, and freight charges to the agreed destination. It is stipulated that as between Gamboa and Imperial the contract was fully performed by both parties.

Appellant contends that since the price under the contract included freight, it was entitled to the refunded freight charges even though these charges were paid by Imperial; and that in paying the freight on the shipments Imperial was merely acting as Gamboa's agent. Alleging that it is entitled to all freight advantages, appellant further contends that frustration of the voyages resulted in carriage of the sugar "free of charge"; that this free carriage resulted in an unexpected windfall which its "shrewd freight contract has won from the ocean carrier"; and that the court below erred in awarding the freight money or any part of it to Imperial.

Appellant's position will not be sustained. Gamboa has, in fact, realized every cent it expected to receive or to which it was entitled under the contract. It has been paid for the sugar and the insurance, and has been relieved of its freight obligations. When it shipped the sugar, and forwarded the proper documents to Imperial, its obligations under the contract were at an end. From that moment the buyer alone stood to lose on the ventures. The buyer, Imperial, was the one who was interested in receiving the sugar at its agreed destination, and when the voyages were broken up, it paid the freight charges, and it with the insurance carriers suffered the expense, risk, and inconvenience incident to the transshipment of the undelivered cargoes. No cases are cited, and we have found none dealing with a situation of this kind, but we think that the principles of fair play and justice sustain the judgment awarding the contested sum to Imperial.

The judgment is affirmed.